IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | |
|---|---|
| Michael Cash, ) | |
| ) | Civil Action No. 7:16-548-BHH-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Dr. Ronald W. Garner and ) | |
| Spartanburg County School ) | |
| District One, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the defendants' motion to dismiss the plaintiff's First Amendment claim (doc. 5) and the plaintiff's motion to file an amended complaint (doc. 18).[1] The plaintiff, who is represented by counsel, filed a complaint in state court on January 21, 2016 (doc. 1-1). The defendants timely removed the action to this court on February 23, 2016, based upon federal subject matter jurisdiction (doc. 1).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTUAL ALLEGATIONS**

The plaintiff was a drafting and design teacher at Swofford Career Center, a multi-district high school career center that serves Spartanburg County School Districts One and Two (doc. 1-1 at pp. 6-7). Defendant Garner is the Superintendent of District One. The plaintiff also names Spartanburg County School District One ("the District") as a defendant. At the end of the Spring 2015 semester, while giving the first of a three-part

---

[1] The undersigned would typically rule on a motion to amend rather than submit a recommendation to the district judge. *See* 28 U.S.C. § 636(b)(1)(A). However, as the issues in the motions to dismiss and to amend are interrelated, the undersigned has prepared a report and recommendation on both motions.

final exam, the plaintiff saw two students talking and one student copying the other's drawing. When he graded the exams, the plaintiff noticed that the two students' drawings were identical, and they both incorrectly drew the exact same portion of the drawing (*id.* at p. 7). The plaintiff "decided to give both students a 50 numeric score on that portion of the exam rather than giving them a zero for cheating pursuant to school policy" (*id.* at p. 8).

The parents complained about the students' scores, and the District ultimately allowed the students to take a retest of the first part of the exam (*id.*). Only one of the students showed up for the exam, and that student obtained a 25 numeric score on the retest. The other student received a 0 numeric score (*id.*). The plaintiff entered all of his students' final grades into PowerSchool, the school district's student information system (*id.* at p. 9). The plaintiff subsequently learned that "someone from District One" had changed the grades in Powerschool for the two students and had given them a final course grade of 85, which translates to a "B" letter grade. In his allegations, the plaintiff does not identify the "someone" who changed the grades (*id.*). The plaintiff tried to open his PowerSchool account to see what exactly had been altered, but he discovered his PowerSchool account had been deleted (*id.*). The plaintiff informed Joel Griggs, an investigator for the South Carolina Department of Education, about the incident (*id.*). According to the plaintiff, Mr. Griggs told him the school was not cooperating in the investigation (*id.*). The plaintiff claims that "[r]ather than be a party to the criminal conduct committed by the District," he "decided to resign" (*id.*).

Subsequently, the plaintiff agreed to meet with the defendant Garner and the Spartanburg County School District Two Superintendent, Dr. Mercer (*id.* at pp. 9-10). During this meeting, Dr. Garner asked the plaintiff what it would take to keep him at Swofford (*id.* at p. 10). The plaintiff stated he would return to his employment if the grades of the two students whom he caught cheating were changed to reflect the grade he had given them (*id.*). The defendants refused to change the grades (*id.*). The plaintiff alleges he was "constructively discharged . . . when it became clear that the District would require

Plaintiff to violate a criminal law of this state to retain his employment" (*id.*). The plaintiff cites South Carolina Code Annotated § 16-13-15, which provides in pertinent part:

> (A) It is unlawful for any person to falsify or alter a transcript, a diploma, or the high school equivalency diploma known as the GED from any high school, college, university, or technical college of this State, from the South Carolina Department of Education, or from any other transcript or diploma issuing entity.
>
> \*\*\*
>
> (C) Any person who violates the provisions of this section is guilty of a misdemeanor and, upon conviction, must be fined not more than one thousand dollars or imprisoned for not more than one year, or both.

S.C. Code Ann. § 16-13-15.

The plaintiff asserts a First Amendment claim under 42 U.S.C. § 1983 against both of the defendants (*id.* at pp. 11-12). The plaintiff also alleges state law claims of wrongful termination in violation of public policy and violation of the South Carolina Payment of Wages Act against the defendant District (*id.* at pp. 10-13).

## APPLICABLE LAW AND ANALYSIS

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 531 (D.S.C. 2014) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Rule 8(a) sets forth a liberal pleading standard, which requires only a " 'short and plain statement of the claim showing the pleader is entitled to relief,' in order to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 569). "The plausibility standard is not akin to a probability requirement, but it

3

asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.' " *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). When determining a motion to dismiss pursuant to Rule 12(b)(6), the court must take all well-pled material allegations of the complaint as admitted and view them in the light most favorable to the non-moving party. *De Sole v. U.S.*, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)). The court must liberally construe *pro se* complaints to allow the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), and such *pro se* complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978).

***First Amendment Claims***

The defendants argue that the plaintiff's First Amendment cause of action fails to state a cognizable claim. The undersigned agrees.[2] In his response to the motion to dismiss, the plaintiff clarifies that he asserts two claims under the First Amendment: (1) his assignment of grades was a form of symbolic communication, and the defendants

---

[2] Any claim under the South Carolina Constitution similarly fails. The plaintiff has failed to cite any decision recognizing the right claimed by the plaintiff under the free speech protection of the South Carolina Constitution. *See* S.C. Const., Art. I, Sec. 2. The Free Speech Clause of the First Amendment is mirrored in Article I, Section 2 of the South Carolina Constitution, and the language of the state clause tracks the federal constitutional language verbatim. As such, the South Carolina Supreme Court has held that the South Carolina Constitution "affords the same protections as does the Federal constitution." *Charleston Joint Venture v. McPherson*, 417 S.E.2d 544, 548 n.7 (S.C. 1992).

4

compelled his speech by forcing him to accept the grades of their choice; and (2) the defendants suppressed his speech in addressing a matter of public concern in violation of *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) (doc. 11 at pp. 4, 7).

As argued by the defendants, of the courts that have addressed the issue of whether and to what extent a teacher's free speech rights are implicated in the assignment of grades to his or her students, none have recognized a violation under facts similar to those alleged by the plaintiff. In *Brown v. Armenti*, 247 F.3d 69, 75 (3d Cir. 2001), the Third Circuit Court of Appeals held that "a public university professor does not have a First Amendment right to expression via the school's grade assignment procedures." That case involved a tenured professor at California University of Pennsylvania who objected to being ordered by the president of the university to change a student's grade from an "F" to an incomplete. *Id*. at 72. The court reasoned that "[b]ecause grading is pedagogic, the assignment of the grade is subsumed under the university's freedom to determine how a course is to be taught." *Id*. at 75.

In *Lovelace v. Southeastern Mass. Univ.*, 793 F.2d 419, 425 (1st Cir. 1986), the First Circuit Court of Appeals rejected a claim by a university instructor who sued his employer alleging his First Amendment rights were violated when his teaching contract was not renewed after he refused to inflate grades or lower his expectations and teaching standards. The court stated that matters such as course content, homework load, and grading policy are core concerns for the educational institution. *Id*. at 426. The court concluded: "To accept plaintiff's contention that an untenured teacher's grading policy is constitutionally protected and insulates him from discharge when his standards conflict with those of the university would be to constrict the university in defining and performing its educational mission." *Id*. (footnote omitted).

In *Wozniak v. Conry*, 236 F.3d 888, 891 (7th Cir. 2001), the Seventh Circuit Court of Appeals characterized a claim by a University of Illinois professor that he had a right not to follow the university's grading procedures as "frivolous." The court stated: "No person has a fundamental right to teach undergraduate engineering classes without

following the university's grading rules." *Id*. at 891. The court reasoned, "it is the [u]niversity's name, not [the professor]'s, that appears on the diploma; the [u]niversity, not [the professor], certifies to employers and graduate schools a student's successful completion of a course of study." *Id*.

In his response to the motion to dismiss, the plaintiff relies (doc. 11 at 10) on the decision of the Sixth Circuit Court of Appeals in *Parate v. Isibor*, 868 F.2d 821, 827 (6th Cir. 1989). In that case, the court held that a university professor's assignment of a letter grade "is symbolic communication intended to send a specific message to the student" and therefore is entitled to "to some measure of First Amendment protection," under principles of academic freedom. *Parate*, 868 F.2d at 827. However, the court distinguished between a teacher being ordered to change a student's grade and an administrative decision to change the grade after the fact, noting that the former could constitute impermissible compelled speech, but the latter would not. *Id*. at 829 ("The defendants' act of ordering Parate to change the grade, rather than the act of giving Student Y a different grade than Parate desired, gives rise to the constitutional violation."). The court determined that the "defendants could have [legitimately] achieved their goals by administratively changing Student Y's grade" and that such action would not have given rise to a constitutional violation; however, "by forcing Parate to change, against his professional judgment, Student Y's grade, the defendants unconstitutionally compelled Parate's speech . . . ." *Id*. at 830.

In *Berg v. Bruce*, 112 F.3d 322 (8th Cir. 1996), the Eight Circuit Court of Appeals considered this issue in the K-12 context. The court avoided the issue of whether the First Amendment gave a teacher the right to assign grades as she saw fit and instead followed the reasoning in *Parate* to determine that no constitutional violation occurred because there was no evidence that the defendant ordered or attempted to compel the plaintiff teacher to change a particular grade. *Id* at 329.

In the lone reported case from our circuit addressing this issue, *Stronach v. Virginia State Univ.*, C.A. No. 3:07-CV-646-HEH, 2008 WL 161304 (E.D. Va. Jan. 15, 2008) the United States District Court for the Eastern District of Virginia dismissed a Virginia State

6

University ("VSU") professor's Section 1983 claim, which alleged that a university administrator changed a grade he (the professor) had given a student in violation of the professor's constitutional rights to free speech. The court based its decision in part on *Urofsky v. Gilmore*, 216 F.3d 401 (4th Cir. 2000), the Fourth Circuit's "most thorough examination of the scope of constitutionally protected academic freedom." *Stronach*, 2008 WL 161304, at *3. In *Urofsky*, the Fourth Circuit concluded that the cases that have referred to a First Amendment right of academic freedom "have done so generally in terms of the institution, not the individual" such that the right inheres to the educational institution, not individual educators within that institution. 216 F.3d at 414. Based on *Urofsky* and the weight of authority from other circuits, the court in *Stronach* determined "that no constitutional right to academic freedom exists that would prohibit senior VSU officials from changing a grade given by [the professor] to one of his physics students against his will." *Stronach*, 2008 WL 161304, at *3-4.

The above decisions are persuasive authority in the present case. The plaintiff, a high school teacher, issued final exam and final semester grades to students, which District officials subsequently changed. Significantly, the plaintiff does not allege that he was forced by the defendants to change the student's grades. Instead, he admits that the grade change was done by "someone from District One." As noted by the court in *Stronach*, 2008 WL 161304, at *4:

> [T]he lynchpin of the holding [in *Parate*] was that the university compelled the professor to personally change the grade. The court reasoned that ordering the professor to change the grade constituted compelled speech and violated the professor's First Amendment rights. *Parate* is cited with fervor by Stronach, but that case does not reflect the law of this Circuit nor does it accurately mirror the facts surrounding Stronach's dispute. Stronach was not compelled to change the grade at issue himself. Ranking university officials utilized their authority to change the grade without any action on the part of Stronach. The Sixth Circuit's reasoning in *Parate* relied on coercion and hence would not apply in this case.

7

2008 WL 161304, at *4 (citing *Parate*, 868 F.2d at 827-28).  Similarly here, the facts as alleged by the plaintiff are clear that the District did not force, or even direct, the plaintiff to take any action to change the grades and, therefore, did not impermissibly compel the plaintiff's speech.  Accordingly, this portion of the First Amendment cause of action fails to state a claim and should be dismissed.

The plaintiff further alleges that the defendants "suppressed his speech in addressing a public concern . . . " in violation of *Pickering,* 391 U.S. 563 (pl. resp. 3).  The so-called *Pickering* balancing test is a means of analyzing retaliation claims where a public employee has suffered an adverse employment action allegedly because he engaged in protected speech.  "First, the public employee must have spoken as a citizen, not as an employee, on a matter of public concern.  Second, the employee's interest in the expression at issue must have outweighed the employer's 'interest in providing effective and efficient services to the public.'  Third, there must have been a sufficient causal nexus between the protected speech and the retaliatory employment action." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 316 (4th Cir. 2006) (quoting *McVey v. Stacy*, 157 F.3d 271, 277-78 (4th Cir. 1998)).

The plaintiff's alleged acts of constitutionally protected speech are:  (1)  the act of assigning a grade to a student; (2)  the plaintiff's protests against the defendants' decision to modify the grades he gave students; and (3)  a report he made to Joel Griggs, an investigator for the South Carolina Department of Education.  Assuming for purposes of this motion that, by protesting or complaining about the defendants' decision to alter the two students' grades, the plaintiff engaged in constitutionally protected speech, the plaintiff must also adequately allege that the defendants engaged in a retaliatory action that adversely affected his protected speech right and that there is a causal relationship between his protected speech and the defendants' action. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000).  Unlike the plaintiff in *Goudeau v. East Baton Rouge Parish Sch. Board*, 540 F. App'x 429 (5th Cir. 2013), on which the plaintiff relies, the plaintiff's complaint is devoid of any allegation of any action the defendants took against

him that infringed upon his free speech rights, whether the questionable right to assign grades or the right to protest matters of public concern. In *Goudeau*, the plaintiff elementary school teacher defied the principal's grading policy and gave her students the grades she felt they deserved. Her superiors directed that the grades be changed in accordance with the principal's wishes, and when the teacher objected to and refused to comply with the grading policy, she was threatened with discipline, including firing, and ultimately was transferred to another, less prestigious school. The court concluded the transfer was a cognizable adverse employment action. 540 F. App'x at 434.

Here, the complaint contains no allegation that the plaintiff suffered any adverse employment action. The plaintiff does not allege that he was asked or compelled to change, nor did he change, the grades. By his own admission, someone with the District made the changes (doc. 1–1 at pp. 9-10). Further, the plaintiff does not assert that the defendants took any retaliatory action against him for reporting to the Department of Education the defendants' decision to alter grades. Instead, the plaintiff avers that he "decided to resign" "rather than be party to the criminal conduct by the District" in changing the grades (*id.* at p. 9). Again, however, by his own allegations, the plaintiff was not "party" to any grade change, nor was he asked to be; the thrust of his case is that he opposed the grade changes and, clearly, did not participate in them. Moreover, by his own allegations, his Superintendents wished for the plaintiff not to resign and asked that he remain as an employee, despite his opposition to the grade changes (*id.* at pp. 9-10).

Here, the plaintiff has provided no factual allegations supporting his belief "that the District would require Plaintiff to violate a criminal law of this state to retain his employment" (*id.* at p. 10). In fact, as discussed above, the plaintiff specifically alleges that the Superintendents wanted him to stay on as an employee. *See Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."); *Iqbal*, 556 U.S. at 679 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is

entitled to relief." (internal quotation marks omitted)).  As the plaintiff has not alleged a required element under *Pickering*, that is, an actionable adverse employment action, this portion of the First Amendment cause of action also fails to state a claim and should be dismissed.

***Qualified Immunity***

Defendant Garner argues that, even if this court were to recognize a First Amendment claim under the facts alleged in the plaintiff's complaint, he is entitled to qualified immunity in his individual capacity.  The undersigned agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right.  *Id*.

To determine whether qualified immunity applies, a district court must determine a plaintiff has alleged the deprivation of an actual constitutional right at all and whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1865-66 (2014) (*per curiam*); and *Wilson v. Layne*, 526 U.S. 603, 609 (1999).  "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Here, as discussed above, the plaintiff's allegations fail to demonstrate that the defendants violated his constitutional rights.  Furthermore, it is clear that no such right was clearly established at the time of the violation.  To be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Stated differently, "in the light of pre-existing law, the unlawfulness [of the official's actions] must

be apparent." *Id*. Specifically, a reasonable school superintendent in Garner's position would not have understood that the grade a public school teacher gives to his student constitutes symbolic communication protected by the First Amendment, or that the administration's modification of a student's grade would amount to a violation of the free speech right. Furthermore, with regard to the retaliation portion of his claim, the plaintiff has failed to allege any facts to plausibly suggest that defendant Garner took any alleged retaliatory action against him. *See Jackson v. Texas S. Univ.*, 997 F. Supp. 2d 613, 639 (S.D. Tex. 2014) (noting that to defeat qualified immunity "Plaintiff [is required] to plead that each Individual Defendant 'through the official's own individual actions, has violated the Constitution.'") (quoting *Iqbal*, 556 U.S. at 676)). In fact, the plaintiff specifically alleges that defendant Garner asked the plaintiff what it would take to keep him at Swofford (doc. 1-1 at p. 10). Accordingly, defendant Garner is entitled to qualified immunity in his individual capacity.

***Motion to Amend***

After briefing on the defendants' motion to dismiss the First Amendment cause of action was complete, the plaintiff filed a motion to amend his complaint (doc. 18). The defendants oppose the motion (doc. 19). Pursuant to Federal Rule of Civil procedure 15(a), a plaintiff may amend his pleading once a matter of course, meaning without the opposing party's consent or the court's leave, within 21 days after serving the pleading or within 21 days after service of a responsive pleading or service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a). In all other cases, a plaintiff must seek leave of court. *Id.* 15(a)(2). Here, the plaintiff must seek leave of court. Amendments are generally freely given unless doing so would be prejudicial to the opposing party, have been made in bad faith, or would be futile. *See id.*; *Jones v. Lexington County Det. Ctr.*, 586 F. Supp. 2d 444, 450 (D.S.C. 2008) (denying motion to amend as futile). If the proposed amended complaint fails to state a claim under Rule 12(b)(6), amendment would be futile, and denial of a motion to amend is appropriate. *See United States v. Kellogg Brown & Root Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

11

The plaintiff's proposed amended complaint suffers from futility because the factual material that the plaintiff seeks to add fails to address, let alone rectify, the failure of the initial complaint to assert a cognizable First Amendment right. The plaintiff's proposed amended complaint, along with the proposed affidavit of Ms. Carolyn Thompson, seeks to allege an additional incident, occurring in 2008, of grade changing attributable to the defendant Garner. Specifically, the proposed amended complaint contains the following allegations:

> 29. Upon information and belief, Defendant Garner has altered the grades of students in the past when their parents have complained to him.
>
> 30. A similar incident to Plaintiff's situation occurred in 2008 when Defendant Garner was serving as the principal for Chapman High School in Inman, South Carolina. Defendant Garner changed the final grades of two students enrolled (hereinafter referred to as "Student A" and "Student B") in a class taught by Ms. Carolyn Thompson. (See Exhibit 1 – Carolyn Thompson Affidavit).
>
> 31. Despite Ms. Thompson giving Student A an 87 and Student B an 85 in the course, Mr. Garner changed the grades to A's after the parents of the students complained to him. When Ms. Thompson confronted Mr. Garner about changing the grades he told her he did it because he could.
>
> 32. A reasonable person in Mr. Garner's position as principal during this time would have known that it is illegal to alter grades on students' transcripts.
>
> 33. Despite knowledge of such illegal conduct, Mr. Garner engaged in a pattern and practice of altering students' final grades to appease the students' parents.

(Doc. 18 at p. 6).

The plaintiff contends that the new allegations "seek to rebut Defendant Ronald Gardner's [q]ualified [i]mmunity defense" (doc. 18-1 at p. 3). However, the proposed factual allegations are of no consequence in the absence of a constitutional right, as discussed above (*see* doc. 19 at pp. 2-3). Further, the plaintiff argues in the motion to amend that "[f]rom the outset of this lawsuit, [he] has asserted he was speaking out against

Defendants' illegal actions and that such speech was protected under the First Amendment" (*id.* at p. 3).  He contends the amendment adds "specificity to allegations already made" (*id.*).  However, neither the complaint nor the proposed amended complaint alleges that when the plaintiff "spoke out" that he stated that the defendants were violating state statutory law.  The plaintiff merely alleges that he spoke out in opposition to the fact that the grades he assigned had been altered by others and that he felt compelled to quit in protest.  The assertion that the defendants had engaged in illegal activity in violation of South Carolina Code Annotated § 16-13-15(A) is not something the plaintiff has ever alleged he said.  Furthermore, even if the plaintiff's amended complaint adequately alleged that he engaged in protected speech, his complaint fails to state a Section 1983 claim because he has not alleged that the District prevented him from speaking out or that it took any adverse action against him for doing so, as more fully discussed above. *See Suarez*, 202 F. 3d at 686 (requiring a § 1983 plaintiff to allege that the defendant's actions had some adverse impact on the exercise of the plaintiff's constitutional rights).  Based upon the foregoing, the motion to amend (doc. 18) should be denied as the proposed amendment fails to state a claim under Rule 12(b)(6), and thus the amendment would be futile.

***State Law Claims***

Having found that the plaintiff's complaint fails to state a claim for violation of the First Amendment and that the motion to amend the First Amendment cause of action should be denied as futile, it is further recommended that the district court decline to exercise supplemental jurisdiction over the plaintiff's state law claims of wrongful termination in violation of public policy and violation of the South Carolina Payment of Wages Act, which are alleged against the District. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ."). *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the defendants' motion to dismiss the plaintiff's First Amendment cause of action should be granted (doc. 5), the plaintiff's motion to amend his complaint (doc. 18) should be denied, and the court should decline to exercise supplemental jurisdiction over the plaintiff's state law claims.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

May 23, 2016
Greenville, South Carolina