IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Michael Cash, | ) |
|            Plaintiff, | ) |
| | )   Civil Action No. 7:16-548-BHH |
| v. | ) |
| Dr. Ronald W. Garner and Spartanburg County School District One, | )   **ORDER** |
|            Defendants. | ) |

This matter is before the Court upon the Magistrate Judge's Report and Recommendation ("Report"), which was made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). In his Report, which was issued on May 23, 2016, United States Magistrate Judge Kevin F. McDonald recommends that the Court grant Defendants' motion to dismiss Plaintiff's First Amendment cause of action; deny Plaintiff's motion to amend his complaint; and decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Plaintiff filed written objections to the Report, and the matter is ripe for review.

## **BACKGROUND**

Plaintiff was a drafting and design teacher at Swofford Career Center, a high school career center serving Spartanburg County School Districts One and Two. Dr. Ronald W. Garner ("Garner") is the Superintendent of District One.

According to Plaintiff's complaint, at the end of the spring 2015 semester, while giving the first of a three-part final exam, Plaintiff witnessed two students talking and one student copying the other student's exam. When Plaintiff graded the exams, he noticed

that the students' drawings were identical and that they both incorrectly drew the same portion of the drawing.  Plaintiff gave both students a score of 50 on that portion of the exam.

When the students' parents complained, the District ultimately allowed the students to take a retest of the first part of the exam.  Only one student showed up for the retest, and that student scored a 25.  The other student scored 0.  Plaintiff entered his students' final grants into PowerSchool, the District's student information system, but Plaintiff subsequently learned that "someone from District One" changed the cheating students' grades in PowerSchool and gave them a final course grade of 85, which translates to a "B" letter grade.  (ECF 1-1 at 9.)  Plaintiff does not identify who changed the grades, but he asserts that he tried to open his PowerSchool account to see what had been altered but discovered that his account had been deleted.  Plaintiff informed Joel Griggs, an investigator for the South Carolina Department of Education, about the incident, and according to Plaintiff, Griggs told him that the school was not cooperating in the investigation.  Plaintiff claims that "[r]ather than be a party to the criminal conduct committed by the District," he "decided to resign."  (*Id.*)

Subsequently, Plaintiff agreed to meet with Defendant Garner and Spartanburg County School District Two's Superintendent, Dr. Mercer.  During this meeting, Garner asked Plaintiff what it would take to keep him at Swofford, and Plaintiff stated he would return if the grades for the students he caught cheating were changed to reflect the grades he had given them. Defendants refused to change the grades, and Plaintiff alleges he was "constructively discharged . . . when it became clear that the District would require Plaintiff to violate a criminal law of this state to retain his employment."  (*Id.* at 10.)  Specifically,

Plaintiff cites section 16-13-15 of the South Carolina Code, which provides in pertinent part:

> (A) It is unlawful for any person to falsify or alter a transcript, a diploma, or the high school equivalency diploma known as the GED from any high school, college, university, or technical college of this State, from the South Carolina Department of Education, or from any other transcript or diploma issuing entity.
>
> . . .
>
> (C) Any person who knowingly violates the provisions of this section is guilty of a misdemeanor and, upon conviction, must be fined not more than one thousand dollars or imprisoned for not more than one year, or both.

S.C. Code Ann. § 16-13-15.

In his complaint, Plaintiff alleges a claim pursuant to 42 U.S.C. § 1983 for violation of his First Amendment rights, as well as state-law claims for wrongful termination in violation of public policy and violation of the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 through -110. On March 1, 2016, Defendants filed a motion to dismiss, asserting that Plaintiff's complaint fails to state a cognizable First Amendment claim and that even if Plaintiff's complaint does state a cognizable First Amendment claim, Defendant Garner is entitled to qualified immunity.

Plaintiff filed a response in opposition as well as a motion to amend his complaint. In his motion to amend, Plaintiff maintains the same causes of action but seeks to include additional facts to demonstrate Defendants' alleged pattern and practice of altering students' grades.

Defendants filed a response in opposition to Plaintiffs' motion to amend, asserting that the proposed amendment would be futile and that the new facts alleged did not cure Plaintiff's failure to state a First Amendment claim.

On May 23, 2016, the Magistrate Judge issued his Report, recommending that the

3

Court grant Defendants' motion to dismiss, deny Plaintiff's motion to amend, and decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

## STANDARDS OF REVIEW

### I.     Motion to Dismiss

When considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true the facts alleged in the complaint and view them in a light most favorable to the Plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999).  The United States Supreme Court has stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### II.     The Magistrate Judge's Report

The Magistrate Judge makes only a recommendation to the Court.  The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court.  *See Mathews v. Weber*, 423 U.S. 261 (1976).  The

4

Court is charged with making a de novo determination of any portion of the Report to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

## ANALYSIS

In his Report, the Magistrate Judge agreed with Defendants that Plaintiff's complaint fails to state a cognizable First Amendment claim. First, with respect to Plaintiff's claim that his assignment of grades was a form of symbolic communication and that Defendants compelled his speech by forcing him to accept different grades, the Magistrate Judge determined that no court has recognized a constitutional violation under similar facts. Likewise, with respect to Plaintiff's claim that Defendants suppressed his speech in addressing a matter of public concern, in violation of *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968), the Magistrate Judge determined that, even assuming Plaintiff engaged in constitutionally protected speech by protesting or complaining about Defendants' decision to alter the students' grades, Plaintiff failed to allege a resulting adverse employment action.

Next, the Magistrate Judge agreed with Defendants that, even if this Court did recognize a First Amendment claim under the facts alleged by Plaintiff, Defendant Garner would be entitled to qualified immunity in his individual capacity, as Plaintiff failed to allege that Defendants violated any clearly established First Amendment right of Plaintiff.

Lastly, the Magistrate Judge determined that Plaintiff's proposed amended complaint suffers from futility because the additional facts that Plaintiff seeks to add do not remedy Plaintiff's failure to allege a constitutional violation.

In his objections to the Magistrate Judge's Report, Plaintiff reiterates his claims and first asserts that the Magistrate Judge improperly acted as the thirteenth juror instead of applying a proper Rule 12(b)(6) analysis. More specifically, Plaintiff objects to the Magistrate Judge's conclusion that the facts in Plaintiff's complaint fail to state a First Amendment claim. Instead, Plaintiff contends that his assigning of grades was a form of symbolic communication because those grades conveyed a particularized message understood by others, and that Defendants violated Plaintiff's First Amendment rights by compelling him to covey a certain message. In support of his argument, Plaintiff cites *Parate v. Isibor*, 868 F.2d 821, 828 (6th Cir. 1989).

Plaintiff also objects to the Magistrate Judge's treatment of his *Pickering* claim, and he contends that he engaged in protected speech by speaking about a matter of public concern–namely, Defendants' illegal act of changing the students' grades–and that he suffered an adverse employment action when he was "constructively discharged."

Finally, Plaintiff objects to the Magistrate Judge's determination that Defendant Garner is entitled to qualified immunity, asserting that Plaintiff's rights pursuant to *Pickering* were clearly established.

After review, the Court finds Plaintiff's objections to be without merit. First, with respect to Plaintiff's claim that the government compelled his speech in violation of the First Amendment by forcing him to accept fraudulent grades, the Court agrees with the Magistrate Judge that Plaintiff's allegations fail to state a cognizable First Amendment claim. As the Magistrate Judge noted, courts that have addressed the issue of a professor's or a teacher's free speech rights in the assignment of grades have not found a constitutional violation under facts similar to those alleged by Plaintiff. For example, in

*Brown v. Armenti*, where a professor objected to being ordered by the president of the university to change a student's grade from an "F" to "incomplete," the Third Circuit Court of Appeals held that "a public university professor does not have a First Amendment right to expression via the school's grade assignment procedures."  247 F.3d 69, 75 (3d Cir. 2001).  Instead, the court held that "the assignment of the grade is subsumed under the university's freedom to determine how a course is to be taught."  *Id.* at 75; *see also Sweezy v. New Hampshire*, 354 U.S. 234, 262 (1957) (Frankfurter, J., concurring) (articulating the four essential freedoms of a university as the rights "to determine for itself on academic grounds who may teach, what may be taught, how it shall be taught, and who may be admitted to study").  Likewise, in *Lovelace v. Southeastern Mass. Univ.*, the First Circuit Court of Appeals rejected a university instructor's claim that his First Amendment rights were violated when his teaching contract was not renewed after he refused to inflate grades or lower his expectations and teaching standards.  793 F.2d 419, 425 (1st Cir. 1986) ("To accept plaintiff's contention that an untenured teacher's grading policy is constitutionally protected . . . would be to constrict the university in defining and performing its educational mission.").  Similarly, in *Wozniak v. Conry*, the Seventh Circuit Court of Appeals characterized a claim by a university professor that he had a right to autonomy in grading his students, despite conflicts with established university grading procedures, as "frivolous."  236 F.3d 888, 891 (7th Cir. 2001).  The court reasoned that "it is the University's name, not [the professor's], that appears on the diploma; the University, not [the professor], certifies to employers and graduate schools a student's successful completion of a course of study."  *Id.*

Although the Fourth Circuit Court of Appeals has not addressed this issue, the

7

United States District Court for the Eastern District of Virginia dismissed a university professor's § 1983 claim where the professor alleged that an administrator changed a grade in violation of the professor's constitutional right to free speech. *Stronach v. Virginia State Univ.*, No. 3:07-cv-646-HEH, 2008 WL 161304 (E.D. Va. Jan. 15, 2008). There, the district court based its decision in part on the Fourth Circuit's decision in *Urofsky v. Gilmore*, where the Fourth Circuit, in upholding a Virginia law making it illegal for state employees to surf the internet for content of a sexual nature on state-owned computers, noted that "cases that have referred to a First Amendment right of academic freedom have done so generally in terms of the institution, not the individual." 216 F.3d 401, 414 (4th Cir. 2000). As the Fourth Circuit also noted in *Urofsky*, "the [Supreme] Court has never recognized that professors possess a First Amendment right of academic freedom to determine for themselves the content of their courses and scholarship, despite opportunities to do so." *Id.* at 415.

Here, in support of his claim, Plaintiff relies on the Sixth Circuit case of *Parate*, where the court held that a university professor's assignment of a letter grade is "symbolic communication intended to send a specific message to the student" and therefore is entitled "to some measure of First Amendment protection" under principles of academic freedom. 868 F.2d at 827. Importantly, however, as the Magistrate Judge noted, the court in *Parate* distinguished between a teacher being ordered to change a student's grade and the administrative decision to change the grade after the fact, noting that the former could constitute impermissible compelled speech, but the latter would not. *Id.* at 829 ("The defendants' act of *ordering* Parate to change the grade, rather than the act of giving Student 'Y' a different grade than Parate desires, gives rise to the constitutional violation.")

(emphasis in original). The court stated:

> If the defendants had changed Student "Y's" "GSW" course grade, then Parate's First Amendment rights would not be at issue. Parate's First Amendment right to academic freedom was violated by the defendants because they ordered Parate to change Student "Y's" original grade. The actions of the defendants, who failed to administratively change Student "Y's" grade *themselves*, unconstitutionally compelled Parate's speech and precluded him from communicating his personal evaluation to Student "Y."

*Id.* at 829 (emphasis in original).

In *Stronach*, the Eastern District of Virginia also considered *Parate* but determined that it "does not reflect the law of this Circuit nor does it accurately mirror the facts surrounding Stronach's dispute." 2008 WL 161304, *4. As the court noted in *Stronach*, the plaintiff there was "not compelled to change the grade at issue himself." *Id.* Rather, university officials changed the grade without any action on the part of the plaintiff.

Likewise, in this case, Plaintiff was not compelled to change the grade himself. Rather, according to his complaint, "the students caught cheating had their final grades altered by someone from District One." (ECF No. 1-1 at 9.) Although Plaintiff asserts in his objections that "he was forced to accept the Defendants' decision to record fraudulent grades to the students' transcripts," it appears that no constitutional right to academic freedom exists that would prohibit school officials from changing a grade given by Plaintiff. *See Stronach*, 2008 WL 161304, *4 ("Given the state of the law in the Fourth Circuit and the decisions of other Circuits in similar cases, the Court finds that no constitutional right to academic freedom exists that would prohibit senior VSU officials from changing a grade given by Stronach to one of this physics students against his will."). Accordingly, the Court agrees with the Magistrate Judge that Plaintiff's claim lies beyond the scope of First Amendment protection.

Next, with respect to Plaintiff's claim that Defendants suppressed his speech in addressing a matter of public concern, in violation of *Pickering*, the Court also agrees with the Magistrate Judge that, even assuming Plaintiff was speaking as a citizen upon a matter of public concern when he alerted an investigator for the South Carolina Department of Education and other school officials of the grade alteration, Plaintiff has not alleged that his speaking out resulted in any adverse employment action.

As the Magistrate Judge noted, to sufficiently allege a violation of his First Amendment rights in connection with his expression against the District's grade alteration, Plaintiff must set forth facts to show that he was speaking as a private citizen, not as an employee, on a matter of public concern; that his interest in the expression at issue outweighed the employer's interest in the efficient provision of public services; and that there was a sufficient causal nexus between the protected speech and the retaliatory employment action. *See Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 316 (4th Cir. 2006) (citing *McVey v. Stacy*, 157 F.3d 271 (4th Cir. 1998)).

Here, even assuming that Plaintiff sufficiently alleged that he was speaking out as a private citizen on a matter of public concern and that his interest in the expression outweighed his employer's operation, nowhere does Plaintiff allege any retaliatory employment action. Instead, Plaintiff alleges: "Rather than be a party to the criminal conduct committed by the District, [Plaintiff] decided to resign." (ECF No. 1-1 at 9.) Importantly, Plaintiff further alleges that he later attended a meeting with the District superintendents who "asked [Plaintiff] what it would take to keep him there teaching." (*Id.*) Plaintiff alleges that he responded "that the only way he would return to his employment is if the students' grades were reported accurately on their transcripts, an act which the

10

District refused." (*Id.* at 10.) Plaintiff relies on these allegations to contend that he was constructively discharged "when it became clear that the District would require Plaintiff to violate a criminal law of this state to retain his employment." (*Id.*) As an initial matter, however, the criminal law upon which Plaintiff relies, S.C. Code Ann. § 16-13-15, provides that "[i]t is unlawful for any person to falsify or alter a transcript," but, as previously discussed, Plaintiff's complaint does not allege that he was compelled to falsify or alter the grades at issue. Rather, Plaintiff's complaint simply alleges that "someone from District One" falsified or altered the grades at issue. Thus, the complaint contains no facts to show that Defendants required Plaintiff to violate a criminal law of this state. Moreover, with respect to Plaintiff's contention that, as a result of his speaking out about the illegal grade alteration, he suffered a retaliatory employment action in the form of constructive discharge, Plaintiff's complaint contains no facts to show that Defendants took any retaliatory action against him for objecting to the grade alteration. In other words, nowhere does Plaintiff allege that Defendants prevented him from speaking out about the grade alteration; nowhere does Plaintiff allege that Defendants threatened to terminate him for speaking out about it; and nowhere does Plaintiff allege that Defendants in any way pressured him to resign. To the contrary, by Plaintiff's own admission, District officials asked him not to resign and to continue teaching. Plaintiff did not accept Defendants' offer because they refused to report the students' grades as he wished, but, as previously established, Defendants' alteration of the grades did not violate Plaintiff's First Amendment right to academic freedom. As the Magistrate Judge noted in his Report:

> The plaintiff does not allege that he was asked or compelled to change, nor did he change, the grades. By his own admission, someone with the District made the changes [ ]. Further, the plaintiff does not assert that the

11

> defendants took any retaliatory action against him for reporting to the Department of Education the defendants' decision to alter grades. Instead, the plaintiff avers that he "decided to resign" "rather than be a party to the criminal conduct by the District" in changing the grades [ ]. Again, however, by his own allegations, the plaintiff was not "party" to any grade change, nor was he asked to be; the thrust of his case is that he opposed the grade changes and, clearly, did not participate in them. Moreover, by his own allegations, his Superintendents wished for the plaintiff not to resign and asked that he remain as an employee, despite his opposition to the grade changes [ ].

(ECF No. 22 at 9.) Ultimately, the Court agrees with the Magistrate Judge that Plaintiff's complaint fails to plead sufficient factual content to show that Plaintiff suffered a retaliatory employment action for speaking out about the grade alteration. Accordingly, Plaintiff's complaint fails to state a First Amendment claim under *Pickering* and/or *McVey*.

Next, the Court also agrees with the Magistrate Judge's determination that, even if this Court were to recognize a First Amendment claim based on the facts alleged, Defendant Garner would be entitled to qualified immunity. Stated simply, with respect to Plaintiff's claim that his assignment of grades was a form of symbolic communication and that Defendants compelled his speech by forcing him to accept different grades, Plaintiff's allegations fail to show that Defendants' actions contravened a clearly established right of which a reasonable person would have known. *Mellen v. Bunting*, 327 F.3d 355, 365 (4th Cir. 2003); *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Moreover, with respect to Plaintiff's claim that Defendants suppressed his speech in addressing a matter of public concern, in violation of *Pickering*, Plaintiff has not alleged any retaliatory action taken by Defendant Garner, and Garner could not have known that his actions contravened a clearly established constitutional right.

Finally, the Court agrees with the Magistrate Judge that Plaintiff's proposed

amended complaint suffers from futility because the proposed additional factual allegations do nothing to remedy Plaintiff's failure to state a constitutional claim. As stated in the Magistrate Judge's Report:

> The plaintiff contends that the new allegations "seek to rebut Defendant Ronald Gardner's [q]ualified [i]mmunity defense." However, the proposed factual allegations are of no consequence in the absence of a constitutional right, as discussed above. Further, the plaintiff argues in the motion to amend that "[f]rom the outset of this lawsuit, [he] has asserted he was speaking out against Defendants' illegal actions and that such speech was protected under the First Amendment." He contends the amendment adds "specificity to allegations already made." However, neither the complaint nor the proposed amended complaint alleges that when the plaintiff "spoke out" that he stated that the defendants were violating state statutory law. The plaintiff merely alleges that he spoke out in opposition to the fact that the grades he assigned had been altered by others and that he felt compelled to quit in protest. The assertion that the defendants had engaged in illegal activity in violation of South Carolina Code Annotaged § 16-13-15(A) is not something the plaintiff has ever alleged he said. Furthermore, even if the plaintiff's amended complaint adequately alleged that he engaged in protected speech, his complaint fails to state a Section 1983 claim because he has not alleged that the District prevented him from speaking out or that it took any adverse action against him for doing so, as more fully discussed above.

(ECF No. 22 at 12-13 (internal citations omitted).)

Having found that Plaintiff's complaint fails to state a First Amendment claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims against the District for wrongful termination in violation of public policy and violation of the South Carolina Payment of Wages Act. In addition, in the interest of economy and to avoid requiring Plaintiff to re-file his state-law claims in state court, the Court remands this matter to the Spartanburg County Court of Common Pleas. *See Arrington v. City of Raleigh*, 369 F. App'x 420, 423 (4th Cir. March 5, 2010) (holding that where, *inter alia*, "the sole federal claim supporting the district court's original jurisdiction was dismissed

voluntarily . . . we fail to see why a federal district court would elect to retain jurisdiction," and finding that the district court should have remanded the state-law claims); *Waybright v. Frederick County, MD*, 528 F.3d 199, 209 (4th Cir. 2008) (holding that district court properly remanded case after the federal claims over which the court had original jurisdiction were dismissed at the summary judgment stage).

## CONCLUSION

Based on the foregoing, it is hereby ordered that the Magistrate Judge's Report (ECF No. 22) is adopted and incorporated herein; Plaintiff's objections (ECF No. 23) are overruled; Defendants' motion to dismiss pursuant to Rule 12(b)(6) (ECF No. 5) is granted; Plaintiff's motion to amend (ECF No. 18) is denied; and Plaintiff's remaining state-law claims are remanded to the Spartanburg County Court of Common Pleas.

**AND IT IS SO ORDERED.**

/s/Bruce Howe Hendricks
United States District Judge

November 16, 2016
Greenville, South Carolina